**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**CHRISTOPHER R. ARMSTRONG**,

Plaintiff,

v.

**MORGAN STANLEY SMITH BARNEY, LLC**,

Defendant.

Civil Action No. 24-691 (ZNQ) (JTQ)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court on Petitioner Christopher R. Armstrong's ("Armstrong") Motion to Vacate an Arbitration Award ("Motion", ECF No. 1) in favor of Respondent Morgan Stanley Smith Barney, LLC ("MSSB") issued by a Financial Industry Regulatory Authority ("FINRA") arbitration panel. Armstrong filed a brief in support of the Motion. ("Moving Br.", ECF No. 1-1.) MSSB opposed the Motion and filed a Cross-Motion to Confirm the Arbitration Award. ("Opp'n Br.", ECF No. 9.) Armstrong replied. (ECF No. 13.) MSSB filed a sur-reply.[1] (ECF No. 16.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Petitioner's Motion to Vacate and will GRANT Respondent MSSB's Cross-Motion to Confirm Arbitration.

---

[1] The Court granted MSSB leave to file a sur-reply. (ECF No. 15.)

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Armstrong and Randall B. Kiefner ("Kiefner") were financial advisors at Charles Schwab Co., Inc. ("Schwab") until March 29, 2019, when they both resigned to join MSSB.[2] (Motion ¶ 5, 10.) A week after their resignations, Schwab sued Armstrong and Kiefner in federal district court seeking temporary injunctive relief and asserted claims in arbitration against MSSB, Armstrong, and Kiefner.[3] (*Id.* ¶ 10.) Schwab alleged that Armstrong and Kiefner breached Schwab's Confidentiality, Nonsolicitation, and Intellectual Property Ownership Agreement ("Confidentiality Agreement") and misappropriated its trade secrets and that MSSB tortiously induced them to do so. (*Id.* ¶ 11.)

Armstrong and Kiefner did not dispute that they had breached the Confidentiality Agreement by "resigning without notice, misappropriating Schwab's customer-identity information and using the information to solicit the customers" but filed a crossclaim against MSSB for tortious inducement. (Moving Br. 1–2.)

After a 21-day hearing, the arbitration panel awarded relief to Schwab, Armstrong, and Kiefner (the "Schwab Award"). (Ex. 4 to Petitioner's Motion to Vacate Arbitration, ECF No.1-3.) The Schwab Award ordered:

 a. MSSB, Armstrong, and Kiefner "are jointly and severally liable for and shall pay to [Schwab] the sum of $3,026,485.44 in compensatory damages, . . . $104,833.89 in costs . . . [and] $1,136,459.08 in attorneys' fees,"

 b. MSSB liable to Schwab for "$3,026,485.44 in punitive damages,"

---

[2] Kiefner is not a party to the motions currently before the Court.
[3] Schwab sought damages against Armstrong, Kiefner and MSSB for: (1) breach of contract; (2) misappropriation of trade secrets; (3) breach of duty of loyalty; (4) tortious interference with contracts and with prospective business relations; (5) unfair competition in violation of N.J.S.A. 56:4-1; (6) aiding, abetting and participation in breach of duty of loyalty and other unlawful conduct; and (6) civil conspiracy. (Ex. 1 to Petitioner's Motion to Vacate Arbitration, ECF No. 1-3.)

    c.  MSSB liable to Armstrong for "$2,859,900 in compensatory damages,"

    d.  MSSB liable to Kiefner for "$1,173,900 in compensatory damages," and

    e.  MSSB liable to Armstrong and Kiefner for "$672,399 in attorneys' fees" and $35,371.76 in costs. (*Id.*)

MSSB paid the full amount due to Schwab in March 2023 (Opp'n Br. 14.) This Court subsequently confirmed the Schwab Award. *Morgan Stanley Smith Barney, LLC v. Charles Schwab & Co., Inc.*, Civ. No. 23-1688, 2023 WL 7151369 (D.N.J. Oct. 31, 2023).

In April 2023, MSSB filed a statement of claim with FINRA, commencing a second arbitration and demanding a two-thirds contribution from Armstrong and Kiefner for the compensatory damages award ("MSSB Arbitration"). (Motion ¶ 24.) Of the $4,320,765.91 "jointly and severally" owed to Schwab, MSSB, Armstrong, and Kiefner agreed that $2,880,510.60, two-thirds of the total, would be held in escrow pending the outcome of the MSSB Arbitration. (*Id.* ¶ 26.)

In the MSSB Arbitration, Armstrong and Kiefner filed an answer contending that there was no common law right of tortfeasor contribution under New Jersey and Florida law and counterclaimed against MSSB for malicious prosecution. (*Id.* ¶ 27.) The parties stipulated that the MSSB Arbitration panel was presented with a single question of law which was whether "[t]he common law rule of equitable contribution required Armstrong and Kiefner to contribute one-third shares to the joint and several portions of the Schwab Award." (*Id.* ¶ 28–29.)

The MSSB Arbitration panel issued its award on November 8, 2023, determining that Armstrong and Kiefner are each liable to pay $1,440,225.30 to MSSB and that the money in escrow is to be used to satisfy the award. ("MSSB Award", Ex. 12 to Petitioner's Motion to Vacate Arbitration, ECF No. 1-3.)

On February 6, 2024, Armstrong filed the instant action to vacate the MSSB Award. In his brief in support of his Petition, Armstrong argues that the award should be vacated because it "manifestly disregarded" both New Jersey and Florida common law.[4]

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") establishes a "strong presumption" in favor of enforcing arbitration awards. *See Brentwood Med. Assocs. v. UMW*, 396 F.3d 237, 241 (3d Cir. 2005) ("There is a strong presumption under the [FAA] in favor of enforcing arbitration awards . . . ."). As such, a reviewing court must take a limited approach and vacate an arbitration award "in the rarest case[s]." *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986). "[M]indful of the strong federal policy in favor of commercial arbitration, [the Court] begin[s] with the presumption that the award is enforceable." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013); *see Rite Aid of N.J., Inc. v. UFCW, Local 1360*, 501 Fed. App'x 189, 192 (3d Cir. 2012) ("We presume that any arbitration award is valid unless the party seeking to vacate the award "affirmatively show[s]" that it is invalid on one of the grounds listed in the [FAA]") (citations omitted) (alteration in original).

Section 10 of the FAA provides four explicit grounds under which a district court can vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[4] MSSB's claim against Armstrong (who lives and works in New Jersey) is governed by New Jersey law, while its claim against Kiefner (a resident of Florida) is governed by Florida law. (Ex. 1 to Petitioner's Motion to Vacate Arbitration, ¶¶ 18-24.)

4

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); *Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) (holding that the grounds for vacatur provided by § 10 are exclusive).

Armstrong challenges the MSSB Arbitration award on the ground that it was rendered in manifest disregard of the law. The Third Circuit has not yet addressed whether manifest disregard of the law remains a valid ground for vacating an arbitration award under the FAA, in the wake of the Supreme Court's decision in *Hall Street*.[5] That is, since *Hall Street*, the Third Circuit has acknowledged the open question as to whether "a court may vacate an arbitration award if the 'arbitrator's decision evidences a manifest disregard of the law' even though 'manifest disregard for the law' is not one of the statutorily prescribed grounds for vacatur enumerated in Section 10 of the FAA." *Bellantuno v. ICAP Securities USA, LLC*, 557 Fed App'x 168, 172 (3d Cir. 2014) (quoting *Tanoma Min. Co. v. Local Union No. 1269 United Mine Workers*, 896 F.2d 745, 749 (3d Cir. 1990)).

On multiple occasions, the Third Circuit has assumed—without explicitly holding—that manifest disregard remains viable in the wake of *Hall Street*. *See, e.g., Bayside Construction LLC*

---

[5] In *Hall Street*, the Supreme Court considered whether the FAA's "grounds for prompt vacatur and modification may be supplemented by contract." 552 U.S. at 578. There, the party requesting vacatur argued that judges can add grounds to vacate an arbitrator's decision, and that parties should also be able to add grounds for vacatur by agreement. *Id.* at 585. The Court held that the statutory grounds established in the FAA "provide the [statute's] exclusive grounds for expedited vacatur and modification." 522 U.S. at 583. The Court did not, however, clearly state whether "manifest disregard" survived as a judicial, rather than as a contractual, ground for vacatur. In a subsequent decision, the Court explicitly avoided the question. *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010). The other circuit courts of appeal have split on this issue: the Second, Fourth and Ninth have held that manifest disregard survives *Hall Street*, while the Fifth, Eighth, and Eleventh have held that *Hall Street* eliminated it.

5

*v. Smith*, App. No. 21-2716, 2022 WL 2593303, at *2 n.6 (3d Cir. July 8, 2022) ("We assume without deciding that an arbitrator's manifest disregard of the law remains a valid basis for vacating arbitration awards."); *see Caputo v. Wells Fargo Advisors, LLC*, App. No. 20-3059, 2022 WL 1449176, at *2 n.11 (3d Cir. May 9, 2022) ("[W]e have not yet weighed in on whether these grounds for vacatur survive the Supreme Court's decision in *Hall Street* . . . ., we will presume, for the purposes of this appeal, that these grounds continue to exist as a basis for the vacatur after *Hall Street*.") (internal quotations omitted); *Simons v. Brown*, App. No. 20-1814, 2022 WL 296636, at *4 n.4 (3d Cir. Feb. 1, 2022) ("Like the District Court, we will assume without deciding that manifest disregard remains a viable basis for vacation") (internal quotations omitted). Without more specific guidance to the contrary from the Third Circuit, the Court will presume, for the purposes of this Motion, that the extra-FAA manifest disregard doctrine continues to exist as a basis for vacatur after *Hall Street. See Simons v. Brown*, 444 F. Supp. 3d 642, 655 (E.D. Pa. 2020) ("Because the Court of Appeals has not held to the contrary, I will again assume without deciding that manifest disregard remains a viable basis for vacation."); *Vitarroz Corp. v. G. Willi Food Intern. Ltd.*, 637 F. Supp. 2d 238, 245 (D.N.J. 2009) ("This Court agrees that in light of *Hall Street*, use of the manifest disregard standard is no longer authorized to the extent it was previously viewed as an additional basis for vacatur. However, insofar as manifest disregard is merely 'shorthand for § 10(a)(3) or § 10(a)(4),' the standard lives on.") (quoting *Hall Street*, 552 U.S. at 585)).

The manifest disregard of the law standard "requires more than legal error." *Whitehead v. Pullman Group, LLC*, 811 F.3d 116, 121 (3d Cir. 2016). "A party seeking to vacate an arbitration award based on the theory that the arbitrators manifestly disregarded the law 'bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal

6

principle, but refused to apply it, in effect, ignoring it.'" *Bellantuono*, 557 Fed App'x at 174 (quoting *Duferco v. Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). Thus, the party seeking to vacate an arbitrator's decision must demonstrate that the arbitrator "(1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 Fed. App'x 172, 176–77 (3d Cir. 2010).

### III. DISCUSSION

Armstrong argues that the MSSB Arbitration panel rendered a decision in manifest disregard of the law when it ordered Armstrong and Kiefner to pay MSSB their two-thirds share of the compensatory damages owed to Schwab and paid in full by MSSB. (Moving Br. 5.) Armstrong contends that MSSB asserted a claim at common law against Armstrong and Kiefner "for pro rata equitable distribution" but Armstrong and Kiefner defended against MSSB's claim on the ground that neither New Jersey nor Florida recognizes a tortfeasor's claim at common law for contribution from a co-obligor on a joint and several liability. (*Id.* at 7.) Armstrong thus claims that the MSSB Arbitration panel "flouted" this controlling law. (*Id.*) In response, MSSB argues that it is a "fundamental rule of equity" that where parties are found jointly and severally liable, as here, "any co-obligor paying more than its proportionate share must be reimbursed by the other obligors." (Opp'n Br. 25.) Armstrong reiterates that an intentional tortfeasor has no claim for equitable contribution. (Moving Br. 6.)

It is a basic principle of arbitration law that "arbitrators are under no obligation to give their reasons for an award." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960); *V.I. Nursing Ass'ns Bargaining Unit v. Schneider*, 668 F.2d 221, 224 (3d Cir.

1981). Where, as here, the basis for an award is unexplained, if the Court can discern any barely colorable justification for the outcome—even if that reasoning would be based on a mistake of law—the award will be sustained as not being made in manifest disregard for the law. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). The Court is guided by its circumscribed scope of review in that it "cannot review arbitration awards for legal error . . . and [is] concerned only with whether it is evident from the record that the arbitrators ignored the applicable law." *Sherrock Bros. Inc. v. DaimlerChrysler Motors Co., LLC*, 260 Fed. App'x 497, 500–01 (3d Cir. 2008) (citing *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)). Based upon the record before it, the Court is not persuaded that the MSSB Arbitration panel manifestly disregarded the law in its decision finding Armstrong and Kiefner liable to MSSB for their two-thirds share of the compensatory damages award. *See id.* at 499 ("That the panel majority might have applied the legal principles differently than this Court might have applied them does not establish a manifest disregard for the law.")

In this case, the MSSB Arbitration panel found Armstrong and Kiefner liable for their share of the damages for which the Schwab Arbitration panel found them jointly and severally liable. "A liability is joint and several when 'the creditor may sue one or more of the parties to such liability separately, or all of them together, at his [or her] option.'" *SEC v. J.W. Barclay & Co., Inc.*, 442 F.3d 834, 843 (3d Cir. 2006) (alteration in original) (quoting *United States v. Gregg*, 226 F.3d 253, 260 (3d Cir. 2000)). The debtor who has paid the whole debt may then "protect itself by an action for contribution against the other joint obligors." *General Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 318–19 (3d Cir. 2007) (quoting *James Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993)).

Armstrong does not dispute that a paying party under joint and several liability may seek contribution from nonpaying parties. Rather, Armstrong challenges MSSB's right of contribution by arguing that common law *tortfeasor* contribution is not recognized in New Jersey or Florida. This attempt to characterize MSSB as a tortfeasor, however, has no basis because the Schwab Arbitration panel did not give its reasons for the award or whether it found MSSB to be a tortfeasor. In fact, based on Schwab's claims against MSSB and Armstrong, i.e., that MSSB tortiously induced Armstrong and Kiefner's *breach of contract*, and there is a judgment against all three, the Court finds it is just as likely, or at the very least—possible, that the Schwab Arbitration panel found MSSB, Armstrong, and Kiefner jointly and severally liable for *compensatory* damages for breach of contract, rather than tort.

In its brief, MSSB cites to multiple exchanges during the MSSB Arbitration hearings where the arbitrators seem to have reached the same conclusion. *See* Opp'n Br. 30–31 ("[a]s Chairman Helewitz noted, because the Schwab Award in paragraph 1 was joint and several as to [MSSB], Armstrong, and Kiefner, the Schwab Panel had to 'have found [MSSB] liable under a breach of contract claim as well, whether they did it rightly or wrongly.'"); *id.* ("Mr. Helewitz states that the Schwab Panel must have found [MSSB] liable for breach of contract because that would be the 'only way to find them jointly and severally liable.'").

Neither scenario is evident. Here, MSSB induced tortious conduct, which also breached a contract. As MSSB points out, because the issue here involves both tortious conduct and a breach of contract, it was not clear whether a tort principle or a contract principle controlled the outcome of the disputed issue. Even if it may be "clearly established" that common law tortfeasor contribution is not available in New Jersey, Armstrong has not demonstrated that the MSSB Arbitration panel "appreciated that this principle controlled the outcome of the disputed issue, and

9

. . . nonetheless willfully flouted the governing law by refusing to apply it." *Paul Green Sch. of Rock*, 389 Fed. App'x at 176–77.

The Court concludes that the MSSB arbitrators' decision finding Armstrong and Kiefner liable to MSSB does not support an inference that it disregarded the law such that they exceeded their authority. Again, the Court does not sit as a super-arbitrator to hear "claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 280 (3d. Cir. 2004) (quoting *Tanoma Mining Co.*, 896 F.2d at 747). Armstrong has failed to establish that the panel "knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Merrill, Lynch, Pierce, Fenner & Smith, Inc., v. Millar*, 274 F. Supp. 2d 701, 706 (W.D. Pa. 2011). So long as a coherent basis in law and fact underlies the Award—and the Court finds such to be the case here—vacatur is improper.

In short, the Court remains mindful that, under the FAA, it is obliged to confirm an arbitration award unless there are grounds to vacate, modify, or correct it; otherwise, arbitration awards are entitled to a strong presumption of correctness. *Brentwood Medical Assocs.*, 396 F.3d at 241. The Court will therefore DENY Petitioner's Motion and GRANT MSSB's Cross-Motion.[6]

---

[6] As a separate point, as MSSB notes, it was the Schwab Arbitration panel that imposed joint and several liability on Armstrong, not the MSSB Arbitration panel. Armstrong did not move to vacate the Schwab Arbitration panel's award and instead "requested that it merely be confirmed." *See Morgan Stanley Smith Barney, LLC v. Charles Schwab & Co., Inc.*, Civ. No. 23-1688, 2023 WL 7151369, at 2 (D.N.J. Oct. 31, 2023). As such, MSSB argues that the MSSB Arbitration panel was legally bound to enforce the Schwab Award in accordance with its plain meaning. (Opp'n Br. 30.) *See, e.g.*, *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 251 (3d Cir. 2020) (confirmed arbitration awards become judgments of the court and are entitled to "the same force and effect" as judgments in other actions); *M&M Dev., LLC v. Watts Restoration Co.*, Civ. No. 21-9274, 2022 WL 16631264, at *10 n.12 (D.N.J. Nov. 2, 2022) (noting that a judgment confirming an arbitration award has preclusive effect according to the FAA's provision that "judgments entered by a federal court confirming an arbitration award 'shall have the *same force and effect*, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action'" (quoting 9 U.S.C. § 13).. Armstrong does not address the binding effect of the Schwab Award on the MSSB Arbitration panel. Because the Court finds no ground for vacatur, however, it does not reach this issue.

## IV. CONCLUSION

For the reasons stated above, the Court will DENY Petitioner's Motion to Vacate the MSSB Arbitration award and GRANT Respondent's Motion to Confirm Arbitration.

Date: **September 30, 2024**

                                              s/ Zahid N. Quraishi
                                            **ZAHID N. QURAISHI**
                                            **UNITED STATES DISTRICT JUDGE**